**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, *ex rel* JOSAP CRAWFORD,** | |
| Petitioner, | Case No. 12 C 422 |
| v. | Hon. Harry D. Leinenweber |
| **MICHAEL P. ATCHISON, Warden, Menard Correctional Center,** | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner's *Habeas Corpus* Petition. For the reasons stated herein, the Petition is denied and no certificate of appealability is granted.

**I. BACKGROUND**

The day after Christmas 2000, Altonio Stewart ("Altonio") and his son, Charles Stewart ("Charles") were shot to death inside Charles' third-floor apartment at 7908 S. Laflin Street in Chicago. Carolyn Cole ("Cole") (also known as Faye) also lived in the building with Altonio, her fiancé. She testified at Petitioner Josap "Blue" Crawford's trial that she heard several gunshots coming from Charles' apartment and then saw Petitioner and Anthony "Gunsmoke" Lake run from Charles' apartment. On the way, Lake dropped a handgun, stopped to retrieve it, and then continued out of the building. This testimony differed from the police report of

Cole's initial eyewitness account in which she failed to mention seeing Petitioner running from the apartment; she only mentioned seeing Lake. Petitioner's attorney did not confront Cole with her police report account, but did confront Cole with her grand jury testimony, during which she also never mentioned seeing Petitioner.

> Q. And, but, you never told anyone else this before, did you?
>
> A. What do you mean –
>
> Q. That you saw him [Petitioner] running down the steps?
>
> . . . .
>
> Q. You testified in the Grand Jury, right?
>
> A. Uh-hum. Yes.
>
> Q. Did you tell them you saw Josap Crawford on the steps?
>
> A. If I was asked the question. I mean, I'm not sure. I know what I saw. But if I was asked the question, I am sure I answered it. But I can't say right off hand if I was asked the question or not.

Trial Tr., R. FF-56-57, ECF No. 15-8, PageID 922-923. In cross-examining Cole, Petitioner's attorney also quoted at length from Cole's Grand Jury testimony. *Id*. at FF-58-59, ECF No. 15-8, PageID 924-925.

At the time of the shooting, building resident Angela King ("King") was with Cole. The police report of her interview did not match Cole's account detail-for-detail, but several points were the same. Cole related in her interview with police and at trial that

- 2 -

King was in the hallway at the time the shots were fired; King's police report account seems to indicate that King and Cole were both inside the apartment at the time of the shooting. King's police report account says she ran with Cole to Charles' apartment after the shooting, but it does not mention King seeing anyone flee the scene.

Neither Cole's nor King's police report accounts mention the presence of witness Willie "Little Bill" Cameron ("Cameron") in Cole's apartment. Cameron testified at trial that he ran into Cole's apartment at the time of the shooting and hid in a closet. Besides Cole, two trial witnesses placed Petitioner in the building at the time of the shooting. Cameron testified that the Petitioner, Lake, and the two victims were all standing in the hallway outside of Charles' apartment just before the shooting. Trial witness and building resident Renee Willis ("Willis") testified that shortly before the shooting, she was standing on the second floor landing and witnessed petitioner and Lake headed up to the third floor. She went to the store and when she returned, she headed to the third floor, but another resident, Kim Clay, grabbed her and warned her not to go to the third floor because Petitioner, Lake and Al were having a meeting. Willis went into her apartment and heard the shots almost immediately.

The building landlord, Wilbert Sievers ("Sievers"), testified at trial that he had rented a second-floor apartment to Petitioner.

- 3 -

Sievers related that Petitioner claimed the apartment was for his mother, but that Kim Clay (who was not Petitioner's mother) had moved in instead along with two younger men. Sievers testified he confronted Petitioner sometime before the shooting about what he suspected were drug sales going on in the apartment Petitioner rented and Petitioner told him to mind his own business.

The police report interview with Sievers indicated Sievers had suspicions that victim Altonio Stewart, who served as Sievers' maintenance man, and his son Charles were involved in drug activity in the building. The report also mentioned that Sievers sold the building shortly before the murders and had rewarded Altonio with $20,000 for his service of many years. Sievers' suspicions regarding Altonio's drug sales and his large payment to Altonio were not introduced into evidence at trial.

Another witness, Aaron Gray ("Gray"), denied being with Petitioner and Lake shortly after the shooting; he also denied hearing Petitioner and Lake discuss the murder during that gathering and laughing about Lake giving the victims "two to the head." Trial Tr., R. GG-11, ECF No. 15-8, PageID 997. Gray was then confronted with his previous grand jury testimony in which he had said he heard Petitioner and Lake discussing the murders shortly after they occurred and laughing about them. A stenographer also testified as to the accuracy of that grand jury

testimony and an assistant state's attorney testified that Gray had told her the same thing during an interview with her.

Petitioner and his sister testified in his defense at trial, contending he was at a shopping mall in Indiana around the time of the murders. Petitioner presented dated and time-stamped receipts, but they were for cash purchases and did not reflect who had made them.

Cook County Judge Lon William Shultz convicted petitioner of murder on March 23, 2005 after a bench trial. He found no evidence that Petitioner himself had pulled the trigger and convicted him instead on an accountability theory.

He found credible witness testimony that put Petitioner with the victims outside Charles' apartment at the time of the murders. He also found credible testimony from witnesses who had previously heard Petitioner or Lake trying to muscle in on drug sales in the building, threatening Charles and Altonio to stop their sales. He put a good deal of reliance on Gray's prior inconsistent statements and said there had been no evidence that those inconsistent statements had been coerced by police as Petitioner's counsel suggested in closing arguments. Petitioner received a sentence of life in prison.

On appeal, Petitioner contended the trial court had erred by admitting Gray's prior inconsistent statements and thereby violating his Sixth Amendment confrontation rights, by admitting

prejudicial hearsay testimony from Cole and Willis, and by deciding the state had proven its case beyond a reasonable doubt. The appellate court affirmed conviction on September 28, 2007; the Illinois Supreme Court denied his petition for leave to appeal on January 30, 2008. The U.S. Supreme Court denied certiorari on June 9, 2008.

On November 10, 2008, Petitioner filed a post-conviction petition in Cook County alleging deprivation of constitutional rights by ineffective assistance of trial counsel. Specifically, Petitioner alleged trial counsel failed to call witness Angela King to the stand to contradict Cole and failed to cross-examine Sievers about the $20,000 payment and Sievers' suspicions of the victims' involvement in drug sales. Petitioner also alleged ineffective assistance of appellate counsel. In the post-conviction proceedings, Judge Thomas V. Gainer found the contentions frivolous and without merit. On March 14, 2011, the Illinois Appellate Court affirmed Judge Gainer. It agreed with Gainer that Petitioner had failed to attach any affidavit from King showing she would have contradicted Cole or Cameron had she testified. It also found that Petitioner had waived the issue of the sufficiency of Cole's cross-examination by failing to bring the matter up with Judge Gainer. On the merits, the appellate court found the cross-examination of Sievers a matter of professional judgment and not objectively

unreasonable. On September 28, 2011, the Illinois Supreme Court denied the petition for leave to appeal.

Petitioner filed his *habeas* petition in this Court on January 19, 2012 on three grounds: (1) trial counsel was ineffective for failing to call Angela King as a witness, (2) trial counsel was ineffective for failing to impeach Cole with a report of Cole's statement to police, and (3) trial counsel was ineffective for failing to impeach Sievers with information in the police report of his interview.

## II. LEGAL STANDARD

Review of state court decisions are limited by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). A petition for *habeas corpus* may only be granted if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Coleman v. Hardy*, 2012 U.S. App. LEXIS 16105, at *5 (7th Cir. Aug. 3, 2012).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a prisoner must show that counsel's performance was deficient and that the prisoner was prejudiced as a result. *Mosley v. Atchison*, 2012 U.S.

App. LEXIS 16259, at *20 (7th Cir. Aug. 6, 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Under the performance prong, a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. The query is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Under the prejudice prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The State argues Petitioner procedurally defaulted the ineffective assistance of counsel claims regarding the failure to call Angela King because he failed to attach an affidavit from her in his post-conviction collateral appeal. It also argues Petitioner defaulted the argument of ineffective assistance of counsel for failure to confront Cole with her police report interview. It was defaulted, the state argues, because Petitioner's post-conviction collateral appeal only raised the contention that *Angela King's* police report interview showed Cole did not witness the petitioner fleeing. Petitioner argues he has causes that excuse these defaults.

The Court assumes, without deciding, that Petitioner does have such causes. It does not help him, however. A petitioner must show prejudice before defaulted grounds will be examined, "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner's first argument fails because there is absolutely no affirmative proof that Angela King would have substantively contradicted Cole's testimony. While it is true that some of the minor details police recorded from Cole and King are not in 100 percent agreement, there is nothing in King's police report account that contradicts Cole's substantive account of seeing the Petitioner flee, or Cameron's account of seeing Petitioner with the victims immediately before the shooting. That King *may* have testified differently is not grounds for ineffective assistance of counsel. Petitioner must show prejudice that King's testimony would have cured; he has not. Additionally, even if King had contradicted Cole, such testimony would have done nothing to undermine Willis' testimony that put Petitioner at the crime scene, and it would not have contradicted Gray's prior inconsistent statements, nor would it have contradicted testimony about Petitioner attempting to take over the drug trade in the building.

The Court cannot say that there is a reasonable chance the outcome would have been different. Counsel for Petitioner cross-examined Cameron, implying that he had been taking drugs shortly before the shooting and casting doubt on Cameron's account of how long he stayed in Cole's closet. Petitioner's counsel also cast doubt on Cameron's account by noting Cameron heard a different number of shots than other witnesses. On the whole, the Court cannot say Petitioner's representation was ineffective because he did not call King to the stand.

As to the argument that Petitioner's counsel was ineffective for failing to confront Cole about her account in the police report, Petitioner fails even more miserably on the merits here. The police report account was substantially the same as Cole's grand jury testimony, and Petitioner's attorney questioned Cole about the key fact missing from that testimony, which was that she did not report seeing Petitioner flee the scene. To question Cole about the omission in the report may have reinforced the point, but more likely it would have been merely a redundancy. Petitioner's trial attorney read from Cole's grand jury testimony to emphasize that she never told the grand jury about seeing the Petitioner flee. To emphasize it one more time with the report may well have been overkill. In any case, the decision of whether use of the report would have been an effective additional emphasis of a key point or the beating of a dead horse rested within trial counsel's

professional judgment. Petitioner has shown no prejudice as a result of the failure to use the police report because the point at issue in the report was made through citation to grand jury testimony.

Lastly, Petitioner argues Sievers should have been cross-examined with information in the police report about Sievers' suspicions about the victims' drug dealing and Sievers' gift of $20,000 to Altonio. The Court cannot say that this was an error on the part of Petitioner's counsel. If Sievers had denied those facts, Petitioner's counsel may have been forced to introduce the police report, which potentially could have led to information damaging to Petitioner. Specifically, the police report recounted that Sievers recalled that Altonio, upon being told Petitioner was moving in, exclaimed "If he [Petitioner] moves in, there is going to be a bloodbath." ECF No. 15-3, PageID 330. Instead, Petitioner's counsel chose to refute Sievers' account with other cross-examination and Petitioner's own testimony.

For instance, Petitioner's counsel succeeded in getting Sievers to admit that Petitioner's installation of a burglar gate over the doorway was not unusual in the building. This undercut the implication that the gate was installed to protect Petitioner's drug trade.

Petitioner also testified that he had approached Sievers to tell him of Altonio's drug dealing, contradicting Sievers'

testimony that Sievers had confronted Petitioner about drug trade in the apartment Petitioner had rented.

Petitioner's attorney introduced an alibi witness for Petitioner and receipts that indicated Petitioner was in another location at the time of the shooting.

In light of all the circumstances and all the testimony, the Court cannot say that Petitioner's counsel engaged in unsound trial strategy or that his identified acts or omissions were outside the wide range of professionally competent assistance.

Nor can this Court say that, had Petitioner's counsel done everything Petitioner suggests he should have, there is a reasonable probability the outcome would have been different.

Most importantly, this Court cannot say that the state appellate court erred in affirming the denial of the collateral attack on Petitioner's counsel. The Petition for *Habeas* is denied.

### B. Certificate of Appealability

In order to obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). He has made such a showing if reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011). The Court

concludes Petitioner has failed to make that substantial showing. Accordingly, it denies a certificate of appealability.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Petition for a Writ of Habeas is denied. No certificate of appealability is granted.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

**DATE:** 9/28/2012